*Supreme Court, Appellate Division*
*Third Judicial Department*

Decided and Entered:  December 8, 2016          520504
_____

MARK SCHROEDER et al.,

                    Appellants,

          v                              MEMORANDUM AND ORDER

STATE OF NEW YORK,

                    Respondent.
_____


Calendar Date:  October 21, 2016

Before:  McCarthy, J.P., Egan Jr., Lynch, Clark and Aarons, JJ.

                    _____


          Mark Lewis Schulman, Monticello, for appellants.

          Eric T. Schneiderman, Attorney General, Albany (Brian D.
Ginsberg of counsel), for respondent.

                    _____


Lynch, J.

          Appeal from a judgment of the Court of Claims (Schaewe,
J.), entered April 10, 2014, upon a decision of the court
following a bifurcated trial in favor of defendant on the issue
of liability.

          Claimant, who was a member of a volunteer ambulance
company, was injured on October 18, 2000 when the ambulance in
which he was a passenger hit a stone wall located along the
westbound shoulder of State Route 17B in the Town of Delaware,
Sullivan County.  Following a two day bench trial in January 2014
limited to the issue of liability, the Court of Claims dismissed
the claim, finding that defendant's failure to install a guide
rail was not a proximate cause of the injury and that, in any
event, defendant was entitled to qualified immunity.  Claimant
appeals.

Defendant's duty to maintain roads in a reasonably safe condition includes the installation of guide rails when necessary (see Friedman v State of New York, 67 NY2d 271, 283 [1986]; Hill v Town of Reading, 18 AD3d 913, 915-916 [2005]; Lattanzi v State of New York, 74 AD2d 378, 379 [1980], affd 53 NY2d 1045 [1981]). With respect to highway safety and design, defendant is "accorded a qualified immunity from liability arising out of a highway planning decision" (Friedman v State of New York, 67 NY2d at 283; see Evans v State of New York, 130 AD3d 1352, 1353 [2015], lv denied 26 NY3d 910 [2015]; Frechette v State of New York, 129 AD3d 1409, 1413 [2015]). "Under this doctrine of qualified immunity, a governmental body may be held liable when its study of a traffic condition is plainly inadequate or there is no reasonable basis for its traffic plan" (Friedman v State of New York, 67 NY2d at 284).

At the time of the accident, the ambulance was proceeding westerly on Route 17B. The stone wall in question, which has been in place since the late 1800s, runs parallel along a curved portion of Route 17B for approximately 110 feet. From the vantage point of claimant's vehicle, the wall included an opening for a concrete staircase about 40 feet west of where the wall began. The record shows that the ambulance drifted to the right and impacted the wall on two occasions. There is no real dispute that, during the first impact, the passenger side of the ambulance glanced against the wall breaking the mirror. Shortly thereafter, there was a second impact in the area of the stairs, the nature of which is at issue. Claimant maintains that there was an abrupt impact with the concrete stairs that caused the ambulance to stop, tossing him across the interior of the ambulance box, or back of the ambulance, causing injury. Defendant maintains that the second impact was also of a glancing nature.

Claimant essentially contends that defendant was negligent in failing to take corrective measures to alleviate the dangerous condition presented by a stone wall situate less than two feet from the fog line of the westbound lane. According to claimant's expert, Glenn Smith, a licensed engineer, defendant should have either removed the wall or installed a guide rail – remedies that would have avoided an abrupt collision with the stairs. In

contrast, defendant presented the testimony of two licensed engineers, Dean Smith, the assistant resident engineer for the Department of Transportation (hereinafter DOT) in Sullivan County, and Daniel Paddick, DOT's former regional traffic engineer. Both of these witnesses testified that an effective guide rail could not be installed given the limited room between the road and the stone wall. Specifically, these witnesses testified that a guide rail works by deflecting the impact of a vehicle and needs a minimum of three feet to do so. The Court of Claims credited the testimony of defendant's experts that the lack of space would render a guide rail ineffective. The court further credited Paddick's explanation that the stone wall effectively served as a guide rail, such that the damage to the ambulance would have been the same had a guide rail been in place; this led the court to conclude that the absence of a guide rail was not a proximate cause of claimant's injuries.

In reviewing a nonjury verdict, "we have 'broad authority to independently review the probative weight of the evidence' but we should defer to the [trial] court's credibility determinations and factual findings" (Evans v State of New York, 130 AD3d at 1353, quoting Ball v State of New York, 106 AD3d 1248, 1249 [2013]). We recognize that both claimant and Martin Handler, an emergency medical technician who was with claimant in the ambulance box at the time of the accident, described the impact as an abrupt stop. Handler further testified that the vehicle was stopped in the road adjacent to the wall and that because the driver was shaken up, Handler himself drove the ambulance further down the road to a point of safety. The record, however, also includes the 2005 deposition testimony of Robert Edington, who testified that he "didn't feel a thing" with the second impact and continued driving until pulling off the road about one tenth of a mile past the accident scene. Notably, Paddick determined from the nature of the damage to the stone wall at the stairs, as well as the limited damage to the ambulance, that the second impact was best described as a "sliding impact." He acknowledged that the passenger runningboard may have impacted the stairs, but explained that the crush damage was not consistent with an abrupt, sudden impact. We note in viewing the photos that there was limited damage to the stone wall and no damage to the front of the ambulance. Notably, the ambulance box protrudes further

out than the main cab of the ambulance, and the limited damage along the passenger side of the ambulance comports with Paddick's testimony. As such, we defer to the court's determination that the absence of a guide rail was not a proximate cause of claimant's injuries.

We further conclude that the record supports the determination of the Court of Claims that defendant is entitled to qualified immunity. Relevant here, there were two projects along Route 17B in the vicinity of the stone wall, a 1993 culvert replacement project and a 2000 guide rail project. While the culvert project did not extend to the stone wall, in an August 1993 memorandum addressing "Accident Data and Analysis," Robert MacMonigle, DOT's regional traffic engineer, commented that there were two property damage accidents involving the stone wall during a three-year study period. MacMonigle suggested that "[i]t would be beneficial to make this wall as crashworthy as possible (end sections, guide rail protection, etc.). If this can be done within the scope of the project, it should be considered." The 2000 guide rail project involved the guide rail directly across Route 17B from the stone wall. A three-year accident analysis for this project revealed one property damage accident involving the stone wall. Paddick, who was employed by DOT throughout these periods, testified that the limited history of property damage accidents did not validate any corrective measures. He further explained that relocating the wall, which included a driveway running above and along the wall to a residence, was an involved project not justified on a cost-benefit ratio. Paddick pointed out that an October 20, 1994 memorandum from DOT's regional design engineer in region 9 concluded that the accident "analysis showed no countermeasures are necessary." Paddick explained that a guide rail is a countermeasure. For the 2000 guide rail project, Paddick explained that one resolution extensively explored was to straighten out Route 17B in the area of the stone wall. Since that would have been a major project impacting the timing of a remedy, DOT opted to replace the guide rails. The foregoing adequately supports the court's determination that defendant's planning decision not to install a guide rail or relocate the wall was reasonable, entitling defendant to qualified immunity (see Schwartz v New York State Thruway Auth., 95 AD2d 928, 929

[1983], affd 61 NY2d 955 [1984]).

McCarthy, J.P., Egan Jr., Clark and Aarons, JJ., concur.


ORDERED that the judgment is affirmed, without costs.



ENTER:

Robert D. Mayberger
Clerk of the Court